### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SIDORICK and MARIAN SIDORICK, <br><br>                Plaintiffs, <br><br> v. <br><br> BRILLIANT HOLDINGS, LLC, PARK 7 GROUP, LLC, PAR REAL ESTATE INVESTMENTS, LLC, RONALD GATEHOUSE, PAUL LEVINE, CHERYL LEVINE, BEEJAN SAVABI, PHILIP SMITH, KELLEY SMITH, BVS STUDENT DCH, LLC, JEFF DUNNE, <br><br>                Defendants. | NO.: CIVIL |

### CIVIL ACTION COMPLAINT

Plaintiffs, Stephan Sidorick and Marian Sidorick, by and through their attorneys, LaBletta Walters, LLC, complains of the above-captioned Defendants, and hereby files this instant action as follows:

### Statement of Parties

1.     Plaintiff, Stephan Sidorick is an adult individual who resides at 159 Dogwood Lane, West Decatur, Pennsylvania 16878.

2.     Plaintiff, Marian Sidorick is an adult individual who resides at 159 Dogwood Lane, West Decatur, Pennsylvania 16878.

3.     Defendant, Brilliant Holdings, LLC is, upon information and belief, a Delaware limited liability company with a principal place of business of 461 Park Avenue South, New York, New York 10016.

1

4.      Defendant, Ronald Gatehouse, is, upon information and belief, an adult individual residing at 48 Jefferson Avenue, Short Hills, New Jersey 07078.

5.      Defendant, Park 7 Group is, upon information and belief, a Delaware limited liability company with a principal place of business of 461 Park Avenue South, New York, New York, 10016.

6.      Defendant, Par Real Estate Corporation is, upon information and belief, a Delaware limited liability company and maintains a registered agent at 874 Walker Road, Suite C, Dover, Delware.

7.      Defendant, Paul Levine is, upon information and belief, an adult individual residing at 37 Beaver Brook Road, Weston Connecticut 06883.

8.      Defendant, Cheryl Levine, is, upon information and belief, an adult individual residing at 37 Beaver Brook Road, Weston Connecticut 06883.

9.      Defendant, Beejan Savabi is, upon information and belief, an adult individual residing at 44 Milburn Street, Bronxville, New York 10708.

10.     Defendant, Philip Smith is, upon information and belief, an adult individual residing at 1424 Lorraine Avenue, Richmond, Virginia 23227.

11.     Defendant, Kelley Smith is, upon information and belief, an adult individual residing at 1424 Lorraine Avenue, Richmond, Virginia 23227.

12.     Defendant, Jeffrey Dunne is, upon information and belief, an adult individual residing at 90 Butternut Lane, Southport, Connecticut  06890.

13.     Defendant, BVS Student DCH, LLC is, upon information and belief, a Delaware limited liability company with a principal place of business of 251 Little Falls Drive, Wilmington, Delaware, 19808.

## Statement of Jurisdiction

14.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 as the parties are diverse in citizenship, and the amount in controversy exceeds $75,000.

15.     Pursuant to a Limited Liability Company Agreement, discussed *infra*, all Defendants consent to the exercise of personal jurisdiction before this Court; as such, venue is proper.

## Statement of Facts

16.     Plaintiffs hereby incorporate all previous paragraphs as though fully set forth herein at length.

### Brilliant Holdings, LLC Limited Liability Company Agreement

17.     As will described more fully below, this matter arises under a contract establishing, *inter alia*, the rights, duties, and obligations of the Members of a Delaware limited liability company known as Brilliant Holdings, LLC, and titled "Limited Liability Company Agreement – Brilliant Holdings, LLC" (the "Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit "A."

18.     Relevant to this matter, the Preamble of the Agreement provides:

This LIMITED LIABILITY COMPANY AGREEMENT (this "**Agreement**") of Brilliant Holdings, LLC, a Delaware limited liability company (the "**Company**"), is entered into this [_____] day of May, 2013, by and among the parties signatory hereto and identified on **Schedule A** hereto and together with any other Persons who are admitted to the Company formed hereby on or after the effective date of this Agreement who are listed on **Schedule A** hereto and who execute a counterpart of this Agreement as members (all such persons being referred to herein as the "**Members**").

\* \* \*

WHEREAS, the Members have agreed to organize and operate a limited liability company in accordance with the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members, intending legally to be bound, agree as follows:

See Exhibit "A" at p. 1 (emphasis in original).

19.     Defendants, Ronald Gatehouse, Par Real Estate Investments, LLC, Paul Levine, Cheryl Levine, Beejan Savabi, Philip Smith, Kelley Smith, BVS Student DCH, LLC, and Jeff Dunne are signatories to the Agreement; and thus, are Members of Brilliant Holdings, LLC.

20.     Plaintiffs, Stephen Sidorick and Marian Sidorick, are signatories to the Agreement; and, as such, are collectively a Member of Brilliant Holdings, LLC in current and good standing.

21.     Section 10.12 of the Agreement states:

**10.12 JURISDICTION AND VENUE.**  Any suit brought by a Member involving any dispute or matter arising under this Agreement may only be brought in the United States District Court for the District of New York, or in any New York state court having jurisdiction over the subject matter of the dispute or matter.  All members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

See Exhibit "A" at p. 24, §10.12.

22.     Pursuant to Section 10.5 of the Agreement, the signatories agreed that "the provisions of [the] Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, personal representatives, executors, successors, and permitted assigns." See Exhibit "A" at p. 23, §10.5.

4

23.     Section 10.11 of the Agreement addresses Notifications, and provides as follows:

> **10.11 NOTIFICATIONS.**   Any notice, demand, consent, election, offer, approval, request or other communication (collectively, a "notice") required or permitted under this Agreement must be in writing and either delivered personally, sent by certified or registered mail, postage prepaid, return receipt requested or via reputable overnight courier.  Any notice to be given hereunder by the Company shall be given by the Manager.  A notice must be addressed to a Member at the Member's last known address on the records of the Company. . . .

See Exhibit "A" at p. 23, §10.11 (emphasis in original).

24.     Pursuant to §10.11 above, any and all notifications must be delivered personally, or sent via certified mail, registered mail, or reputable overnight courier.  See Exhibit "A" at p. 23, §10.11.

25.     Delivery by way of electronic mail (e-mail) is not a valid method of delivery pursuant to the Agreement.  See Exhibit "A" at p. 23, §10.11.

26.     Further relevant to this matter, the Agreement speaks to "Distributions and Allocations" as follows:

> **4.1 DISTRIBUTIONS GENERALLY.**     Cash   and/or   securities received by the Company shall be distributed to all Members as determined by the Manager in his sole and absolute discretion; *provided, however,* that after the Manager sets aside appropriate reserves for anticipated liabilities of the Company arising under Section 9.1, (i) Distributable Cash shall be distributed to the Members entitled thereto pursuant to Section 4.2; (ii) Capital Transaction Distributable Cash shall be distributed to the Members entitled thereto pursuant to Section 4.3; and (iii) if the Company receives a distribution of Allocated Tax Distribution Cash from any Subsidiary, such amount received shall be distributed pursuant to Section 4.4(b).

See Exhibit "A" at p. 11, §4.1 (emphasis in original).

27.     Section 4.2 addresses distributions of cash as follows:

**4.2 DISTRIBUTIONS OF DISTRIBUTABLE CASH.**   Upon   the Company's receipt of any Distributable Cash, such Distributable Cash shall be distributed as follows:

(a)     first, to the Members in proportion to their respective outstanding Preferred Returns, until each Member has received distributions under this Section 4.2(a) and Section 4.3(a) equal to its Preferred Returns, determined as of the date of distribution;

(b)     second, to the Members in proportion to their respective Unrecovered Capital until such Unrecovered Capital has been reduced to zero;

(c)     third, promptly upon the Company's receipt thereof, an amount of such Distributable Cash equal to the product of (i) BVS's Percentage Interest as of the date of distribution, multiplied by (ii) the total amount of Distributable Cash then received by the Company, shall be distributed to BVS; and

(d)     fourth, at least seventy-five percent (75%), but not more than ninety-five percent (95%), of the Distributable Cash remaining after the distribution to BVS under clause (a) above shall be distributed to the Members, other than BVS, on the last day of each Fiscal Quarter, pro rata, in proportion to their respective Percentage Interests (excluding for the purposes of this clause (b) the Percentage Interest of BVS); provided, however, that if a Termination Date has occurred, such distributions under this clause (b) shall be made to the Members, other than BVS, and any Terminated Members pro rata, in proportion to the Members' respective Distribution Percentages and any Terminated Member's Vested Distribution Percentage, in each case, as of the date of such distribution.

See Exhibit "A" at p. 11, §4.2 (emphasis in original).

28.     Section 4.3 addresses distributions of capital transaction distributable cash

as follows:

**4.3     DISTRIBUTIONS   OF   CAPITAL   TRANSACTION DISTRIBUTABLE CASH.**   Promptly upon the Company's receipt of any Capital Transaction Distributable Cash, such Capital Transaction Distributable Cash shall be distributed as follows:

(a)     first, to the Members in proportion to their respective outstanding Preferred Returns, until each Member has received distributions

6

under this Section 4.2(a) and Section 4.3(a) equal to its Preferred Returns, determined as of the date of distribution;

(b)     second, to the Members in proportion to their respective Unrecovered Capital until such Unrecovered Capital has been reduced to zero;

(c)     third, an amount of such Capital Transaction Distributable Cash equal to the product of (i) BVS's Percentage Interest as of the date of distribution, multiplied by (ii) the total amount of Capital Transaction Distributable Cash then received by the Company, shall be distributed to BVS; and

(d)     fourth, at least seventy-five percent (75%), but not more than ninety-five percent (95%), of the Capital Transaction Distributable Cash remaining after the distribution to BVS under clause (a) above shall be distributed to the Members, other than BVS, on the last day of each Fiscal Quarter, pro rata, in proportion to their respective Percentage Interests (excluding for the purposes of this clause (b) the Percentage Interest of BVS); provided, however, that if a Termination Date has occurred, such distributions under this clause (b) shall be made to the Members, other than BVS, and any Terminated Members pro rata, in proportion to the Members' respective Distribution Percentages and any Terminated Member's Vested Distribution Percentage, in each case, as of the date of such distribution.

See Exhibit "A" at pp. 11-12, §4.3.

29.     Moreover, Section 4.4 addresses distributions for payment of taxes as follows:

**4.4 DISTRIBUTIONS FOR PAYMENT OF TAX.**

(a)     Anything contained in this Agreement to the contrary notwithstanding, if the Manager determines that, after setting aside amounts for Company liabilities, the Company has cash available for distribution, the Company will, in lieu of making distributions under **Sections 4.1**, **4.2** or **4.3**, in the reasonable discretion of the Manager, distribute, with respect to each fiscal year of the Company, up to the amount sufficient to enable each Member to discharge any Federal, state, and local tax liability arising as a result of such Member's interest in the Company, assuming for this purpose that each Member is subject to a forty-five percent (45%)

7

combined Federal, state and local tax rate on all ordinary income allocated to it under this Agreement and a twenty-five percent (25%) combined Federal, state and local tax rate on all capital gain income allocated to it under this Agreement. Distributions made under this **Section 4.4** with respect to a fiscal year shall be made among the Members, pro rata, in proportion to the amount of Net Profits allocated to each Member during such fiscal year. Such distributions will be debited to such Member's Capital Account, as provided in **Appendix I** to this Agreement and shall be treated as an advance of distributions to be made under Sections **4.1**, **4.2** and **4.3**.

(b)     Without in any way limiting **Section 4.4(a)** above, upon receipt of Allocated Tax Distribution Cash from any Subsidiary, the Manager shall distribute to each of the Members, Allocated Tax Distribution Cash to enable each Member to discharge any Federal, state, and local tax liability arising as a result of such Member's interest in the Company. Distributions made under this **Section 4.4** with respect to a fiscal year shall be made among the Members, pro rata, in proportion to the amount of Net Profits relating to the activities of such Subsidiary allocated to each Member during such fiscal year. Such distributions will be debited to such Member's Capital Account, as provided in **Appendix I** to this Agreement and shall be treated as an advance of distributions to be made under **Sections 4.1**, **4.2** and **4.3**. For the avoidance of doubt, no Member shall have a right to receive, and the Company shall not be obligated to make, tax distributions pursuant to this **Section 4.4(b)** in excess of the aggregate amount of Allocated Tax Distribution Cash received by the Company in any fiscal year. "Allocated Tax Distribution Cash" shall mean all distributions, directly or indirectly, received by the Company from a Subsidiary pursuant to the Organizational Documents of such Subsidiary for the purpose of enabling the Company to discharge any Federal, state, and local tax liability arising as a result of the Company's interest in such Subsidiary.

(c)     The Company will at all times be entitled to make payments with respect to any Member in amounts required to discharge any legal obligation of the Company to withhold or make payments to any governmental authority with respect to any Federal, state or local tax liability of the Member arising as a result of the Member's interest in the Company. Each such payment will be debited to such Member's Capital Account, as provided in Appendix I to this Agreement.

See Exhibit "A" at p. 13, §4.4.

30.     Additionally, the Agreement addresses allocations as follows:

8

**4.5    ALLOCATIONS.** Items of income, gain, loss, deduction and credit of the Company shall be allocated among the Members as set forth in **Appendix I** to this Agreement.

See Exhibit "A" at p. 13, §4.5.

31.    Applicable to this matter, the Agreement sets forth, by way of a definition, the ways in which a Member may be terminated:

**"Terminated Member"** shall mean a Member, other than PAR and BVS, that:

(h)    subject to the applicable cure period set forth in the definition of "Cause," the Manager terminates such Member for Cause . . . .

See Exhibit "A" at p. 5.

32.    The Agreement defines "Cause" as follows:

**"Cause"** means, with respect to a Member, other than PAR or BVS, (A) any event or course of conduct by such Member that is not cured, to the reasonable satisfaction of the Manager, by such Member within thirty (30) days of receiving written notice that the Manager has determined, in his reasonable and good faith discretion, that based on such event or course of conduct, the Member's credibility, reputation or working relationship with the other Members no longer conforms to the standards that the Company requires or this Agreement and, as a result of such event or course of conduct, (1) the Member's ability to perform his or her obligations to the Company has been materially impaired, or (2) the continued affiliation of the Member with the Company would be materially detrimental to, or would materially interfere with, the business, operations or prospects of the Company, or (B) a breach of **Section 10.13** hereof by such Member. Any notice delivered by Manager in accordance with this definition of "Cause" shall reasonably set forth the event or course of conduct that the Manager determines meets this definition of "Cause."

See Exhibit "A" at pp. 2-3.

### The Conduct of Member, Stephen Sidorick and Marian Sidorick

33.    Upon information and belief, from the execution of the Agreement through November 29, 2017, Plaintiffs, together as a single Member of Brilliant Holdings, LLC, carried out their duties in a reasonable and proper manner without incident or complaint.

9

34.     On or about November 30, 2017, Defendant, Ronald Gatehouse sent correspondence (the "November Correspondence") only to Stephen Sidorick attempting to terminate the Membership of Member, Stephen Sidorick and Marian Sidorick.  A true and correct copy of the November Correspondence is attached hereto and incorporated herein as Exhibit "B."

35.     Importantly, this correspondence was not addressed or sent to Member, Marian Sidorick.

36.     As such, Marian Sidorick did not receive any notice, let alone proper notice, of the content contained within the November Correspondence.

37.     Because the correspondence was provided to only one of the two individuals, namely Stephen Sidorick, that constitute the Member of Brilliant Holdings, LLC, the termination notice was, and remains, invalid and ineffective.

38.     As such, Member, Stephen Sidorick and Marian Sidorick, remain a current Member of Brilliant Holdings, LLC in good standing.

39.     Further, despite the fact that the Agreement permits a Member to cure any and all defects, Mr. Gatehouse, by way of the November Correspondence, expressly and implicitly indicated that he would not permit Mr. Sidorick to cure any alleged defects.

40.     In other words, Mr. Gatehouse unreasonably, and lacking good faith, prohibited Mr. Sidorick from curing any and all complained of conduct, despite the right to cure any defect being a valid and enforceable right under the Agreement.

41.      Mr. Gatehouse's conduct was outside the scope of his contractual authority and no such authority existed for Mr. Gatehouse's conduct in the Agreement or otherwise.

42.     Because Mr. Gatehouse prohibited Member, Stephen Sidorick and Marian Sidorick, from curing any and all complained of conduct, the termination is invalid and ineffective.

43.     As such, Member, Stephen Sidorick and Marian Sidorick, remains a Member of Brilliant Holdings, LLC in good standing.

44.     Upon information and belief, and notwithstanding the fact that Mr. Gatehouse acted unreasonably and in bad faith, Member, Stephen Sidorick and Marian Sidorick, cured any and all conduct.

45.     Despite the fact that Member, Stephen Sidorick and Marian Sidorick, cured its conduct, Mr. Gatehouse unreasonably, and without any good faith basis, refused to withdraw the ineffective notice of termination.

46.     As such, Member, Stephen Sidorick and Marian Sidorick, remains a Member of Brilliant Holdings, LLC in good standing.

47.     Additionally, in violation of the terms of the "Cause" clause contained in the Agreement, Mr. Gatehouse failed to articulate the reason(s) why the continued affiliation of Member, Stephen Sidorick and Marian Sidorick, would be "materially detrimental' to Brilliant Holdings, LLC.

48.     Mr. Gatehouse's failure to articulate the reason(s) why the continued affiliation of Member, Stephen Sidorick and Marian Sidorick, would be "materially detrimental" to Brilliant Holdings, LLC rendered the termination invalid and ineffective.

49.     As such, Member, Stephen Sidorick and Marian Sidorick, remains a Member of Brilliant Holdings, LLC in good standing.

50.     Because Member, Stephen Sidorick and Marian Sidorick, remain a Member of Brilliant Holdings, LLC in good standing, they are currently entitled to, and always have been entitled to, ongoing distributions and allocations set forth in Article 4 of the Agreement.

51.     Despite the fact that Stephen Sidorick and Marian Sidorick, remain a Member in good standing, Defendants, both individually and collectively, failed to provide the distributions and allocations to Plaintiffs.

52.     Defendants intentionally, knowingly, and purposefully continue to withhold distributions and allocations from Member, Stephen Sidorick and Marian Sidorick in violation of the terms of the Agreement and the law.

53.     Defendant's actions with respect to the withholding of distributions and allocations is willful, wanton, and malicious, and no basis exists at law or otherwise to support their willful, wanton, and malicious conduct.

54.     At this time, Plaintiffs demand that Defendants provide to Stephen Sidorick and Marian Sidorick, who are and always have been a current Member in good standing, the distributions and allocations owed from 2017 to the present.

55.     In the alternative, even assuming the termination was effective and valid, Defendants intentionally, knowingly, and purposefully have withheld any and all monies due and owing to Member, Stephen Sidorick and Marian Sidorick arising from their termination.

56.     In fact, Defendants, by way of the November Correspondence, knew, or should have known, that Member, Stephen Sidorick and Marian Sidorick, were owed monies arising from the termination.

12

57.     The November Correspondence states, in part, "I'd like to meet with you sometime this month to discuss the orderly transition of your responsibilities and ***the details of your receipt of distributions in which you've vested and to which you're entitled***." (emphasis added). See Exhibit "B."

58.     Despite the clear and unequivocal representations and promises in the November Correspondence, Member, Stephen Sidorick and Marian Sidorick, have not received any monies, compensations, or distributions from the Defendants, and at all times material hereto, have withheld and/or refused to issue or make any distribution or payment to Member, Stephen Sidorick and Marian Sidorick.

59.     To date, however, Defendants have withheld and/or refused to distribute or paid said monies, compensations or distributions from Member, Stephen Sidorick and Marian Sidorick.

60.     Moreover, the conduct of Defendants was done so intentionally, willfully, wantonly, and maliciously

### Known Distributions, Allocations, and Payments To Date

61.     Plaintiffs hereby incorporate all previous paragraphs as though fully set forth herein at length.

62.     As noted above, Plaintiffs, as a single Member, were, and continue to be, entitled to numerous distributions, allocations, and other payments.

63.     By way of just one example, in the Spring of 2018, all Members, except Plaintiffs,  received a share of monies in accordance with their percentage of ownership. If Defendants would have complied with all terms and provisions as required by the Agreement, then Plaintiffs' would have received a distribution in the amount of

$530,925.96.   Furthermore,  Defendants  withheld  other  monies,  which  should  have distributed to Plaintiffs, and instead funded other business dealings and/or ventures rather than pay Plaintiffs monies due and owed in violation of the plain terms of the Agreement.

64.     It is believed and therefore averred that Plaintiffs are entitled to additional distributions from Defendants in an amount estimated to be in excess of $8,000 per month or more.

65.     Plaintiffs never received these disbursements as well as other monies due and owed to them, including but not limited to quarterly management fees and other distributions.

66.     Moreover, among other things, Plaintiffs are entitled to a payment in the amount of at least $40,000, representing proceeds from a real estate transaction in Pittsburgh.

67.     Plaintiffs never received this payment as well as other payments due and owed to them.

68.     Upon information and belief, Plaintiffs are, and continue to be, entitled to the above distributions, allocations, and payments, including but not limited to monies owed for quarterly management fees and other distributions.

69.     Upon information and belief, Plaintiffs are entitled to other additional distributions, allocations, and payments.

70.     At all times material hereto, Defendants, have acted willfully, wantonly, and maliciously in withholding any and all distributions, allocations, and payments from Plaintiffs.

### Count I - Breach of Contract

71.      Plaintiffs hereby incorporate all previous paragraphs as if fully set forth herein at length.

72.      As detailed above, Plaintiffs, as a Member of Brilliant Holdings, LLC, entered into the Agreement with Defendants.

73.      The Agreement articulates rights and obligations of the parties, including but not limited to, the distributions and allocations due and owing to each Member.

74.      Plaintiffs, as a current Member of Brilliant Holdings, LLC in good standing, are entitled to distributions and allocations, among other things, from November 2017 to the present, as set forth in the Agreement.

75.      Defendants have knowingly and willfully failed to provide Plaintiffs with the distributions and allocations due and owing to Plaintiffs under the Agreement.

76.      Further, even if the Membership interest of Plaintiffs was properly terminated, which Plaintiffs dispute, Plaintiffs would remain entitled to distributions and allocations, among other things.

77.      In fact, Defendants acknowledged in writing, even assuming that the Plaintiffs' Membership interest was properly terminated, that Plaintiffs remain entitled to distributions and allocations as set forth in the Agreement.

78.      Despite this representation, Defendants have refused to provide Plaintiffs with the distributions and allocations owed to Plaintiffs under the Agreement.

79.      Accordingly, Defendants' conduct constitutes a breach of the Agreement to which the Plaintiffs are owed damages.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and award damages in excess of $75,000, plus costs, fees, attorney's fees, and interest.

## Count II - Breach of Fiduciary Duty

80.     Plaintiffs hereby incorporate all previous paragraphs as though fully set forth herein at length.

81.     Defendants had, and continue to have, a fiduciary duty to ensure that all distributions and allocations, as well as all rights, duties, and obligations, were properly paid to Plaintiffs.

82.     By failing, and continuing to fail, to provide distributions and allocations to Plaintiffs, Defendants have breached the fiduciary duty owed to Plaintiffs.

83.     Defendants' failure to provide distributions and allocations to Plaintiffs is willful, wanton, and malicious.

84.     Defendants' failure to provide distributions and allocations to Plaintiffs has caused Plaintiffs serious financial harm.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and award damages in excess of $75,000, plus punitive damages, consequential damages, as well as costs, fees, attorney's fees, and interest.

## Count III - Breach of the Duty of Good Faith and Fair Dealing

85.     Plaintiffs hereby incorporate all previous paragraphs as if those paragraphs were fully set forth herein at length.

86.     Implied in every contract is the covenant of good faith and fair dealing.

87. Defendants knew, or, at a minimum, should have known that Plaintiffs are owed distributions and allocations pursuant to the Agreement.

88. To date, however, Defendants have failed to provide those distributions and allocations to Plaintiffs.

89. By failing, and continuing to fail, to provide distributions and allocations to Plaintiffs, Defendants have breached the covenant of good faith and fair dealing.

90. Defendants' failure to provide distributions and allocations to Plaintiffs is willful, wanton, and malicious.

91. Defendants' failure to provide distributions and allocations to Plaintiffs has caused Plaintiffs serious financial harm.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and award damages in excess of $75,000, plus punitive damages, consequential damages, as well as costs, fees, attorney's fees, and interest.

### Count IV – Tortious Interference with Contract

92. Plaintiffs hereby incorporate all previous paragraphs as if those paragraphs were fully set forth herein at length.

93. Pursuant to the Agreement, Plaintiffs are entitled to distributions and allocations.

94. In the November Correspondence, Defendants expressly acknowledge that that Plaintiffs are owed certain distributions and allocations.

95. Despite this acknowledgment and representation, Defendants have refused to provide the distributions and allocations to Plaintiffs.

96.     Defendants, by withholding distributions and allocations from Plaintiffs, intentionally acted outside of their authority under the Agreement.

97.     Defendants' failure to provide distributions and allocations to Plaintiffs has caused Plaintiffs serious financial harm.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and award damages in excess of $75,000, plus punitive damages, consequential damages, as well as costs, fees, attorney's fees, and interest.

### Count V – Conversion of Personal Property

98.     Plaintiffs hereby incorporate all previous paragraphs as if those paragraphs were fully set forth herein at length.

99.     The distributions and allocations due to Plaintiffs under the Agreement constitute the personal property of Plaintiffs.

100.    In fact, in the November Correspondence, Defendants expressly acknowledged that Plaintiffs are owed certain distributions and allocations.

101.    Despite this clear and unequivocal admission, Defendants have intentionally maintained possession of Plaintiffs' property and refused to provide the same to Plaintiffs.

102.    Defendants' failure to provide the distributions and allocations to Plaintiffs is willful, wanton, and malicious.

103.    Defendants' failure to provide distributions and allocations to Plaintiffs has caused Plaintiffs serious financial harm.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and award damages in excess of $75,000, plus punitive damages, consequential damages, as well as costs, fees, attorney's fees, and interest.

**LABLETTA & WALTERS LLC**

By: _____

CHRISTIAN LABLETTA, ESQUIRE

Dated: September 26, 2019

Attorney for Plaintiffs
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
(212) 835-1661

19